**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RAYMOND MYKOLAITIS, et al., | : | |
| | : | CIVIL ACTION NO. 13-1868 (MLC) |
| Plaintiffs, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| THE HOME DEPOT U.S.A., INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COOPER, District Judge**

Plaintiffs, Raymond Mykolaitis and Marija Mykolaitis (hereinafter, referring only to

Raymond Mykolaitis as "Plaintiff"), brought this action against Defendants, Husky, The

Home Depot U.S.A., Inc., and Tricam Industries in New Jersey Superior Court, Monmouth

County, on February 8, 2013.  (See generally dkt. 1.)[1]  Within thirty days of being served with

the summons and complaint, Tricam Industries and The Home Depot U.S.A., Inc., filed a

notice of removal with this Court claiming subject-matter jurisdiction pursuant to 28 U.S.C. §

1332.  (See id.)  This Court terminated the action insofar as it had been brought against Husky

on May 7, 2013.  (See generally dkt. 8.)

Defendants Home Depot U.S.A., Inc. and Tricam Industries now move for summary

judgment as to the products liability claim asserted against them.  (See generally dkt. 33.)

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring
to the docket entry numbers by the designation of "dkt."  Pincites reference ECF pagination.

Plaintiff has not opposed the motion.  For the reasons stated below, the Court will grant the motion for summary judgment.

## BACKGROUND

### I.      FACTUAL HISTORY

On February 18, 2011, Plaintiff, a 200-pound, 5'10" man, fell from a Model ASLI 1-6-2, 6-foot, Type I aluminum, 250-pound duty-rated Husky brand stepladder, manufactured in July 2007 and purchased by Plaintiff in 2009 at The Home Depot.  (See dkt. 33-4 at 1, 5.)  On the date of the fall, Plaintiff had been using the ladder to clean his home's rain gutters, which he had done twice each year since purchasing the ladder.  (See id. at 5.)  Plaintiff never noted any ladder instability in the two years leading up to his fall.  (See id.)

On the date of the accident, Plaintiff testified that the stepladder was stable on the ground.  (See id. at 6.)  Plaintiff began to clean his home's rain gutter, ascending and descending the ladder as needed, and moving the ladder about fifteen times before his fall. (See id.)  Plaintiff claims that he fell as he was stepping upward from the second step while reaching for the gutter with his left hand and holding a bag of leaf debris in his right hand. (See id. at 7.)  Plaintiff recalls that his left hand touched the gutter before falling, but does not remember whether he fell to the right or left, or if the ladder hit him as he fell.  (See id. at 8.)

### II.     PROCEDURAL HISTORY

Plaintiff initially filed suit in New Jersey Superior Court, Monmouth County, alleging a violation of the New Jersey Products Liability Act.  (See dkt. 1 at 8–10.)  Upon removal to this Court, Defendants filed a motion to preclude the testimony of Gene Litwin, Plaintiff's expert as to his design defect claim.  (See generally dkt. 18.)  The motion was fully briefed

and the Court held oral argument on the motion on June 18, 2015.  (See dkt. 29.)  This Court

granted Defendants' motion and held that Gene Litwin was not permitted to testify on the

subject of design defects in Type I aluminum, 250-pound duty-rated stepladders.  (See dkt.

30; dkt. 31.)[2]

The Court now resolves the motion for summary judgment without oral argument

pursuant to Local Civil Rule 78.1(b).

**DISCUSSION**

**I.     APPLICABLE LAW**

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The non-movant must then

present evidence that raises a genuine dispute of material fact.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250 (1986).  Material facts are those "that could affect the

outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is

sufficient to permit a reasonable jury to return a verdict for the non-moving party."  Lamont v.

New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted).  This

evidence may include "citing to particular parts of materials in the record" or a "showing that

the materials cited do not establish the absence or presence of a genuine dispute, or that an

---

[2] The Court's Memorandum Opinion, dated July 6, 2015, provides a detailed overview of the factual
background pertaining to Defendants' motion to strike the testimony of Gene Litwin.  (See generally
dkt. 30.)  The Court writes for the parties and assumes their knowledge of the matter.

adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)–(B).

A movant is not automatically entitled to summary judgment because the non-movant does not oppose the motion. See Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990). "If the nonmoving party fails to oppose the motion [for summary judgment] by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F.Supp.2d 425, 431–32 (D.N.J. 2001) (internal quotation and citation omitted). The Court may then only grant the unopposed motion if appropriate. See Fed.R.Civ.P. 56(e). An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law. See Anchorage Assocs., 922 F.2d at 175.

**B.    Design Defect Standard**

A prima facie case for a design defect requires the plaintiff to prove: (1) that the product was defective; (2) the defect existed when the product left the manufacturer's control; and (3) the defect proximately caused injuries to the plaintiff, who was an intended user or a reasonably foreseeable user of the product. Myrlak v. Port Auth. of N.Y & N.J., 157 N.J. 84, 97 (1999); see also N.J.S.A. 2A:58C-2 (establishing elements for prima facie cause of action under New Jersey Products Liability Act). A product is defective if "it is not reasonably fit, suitable, or safe for the ordinary or foreseeable purpose for which it is sold." Myrlak, 157 N.J. at 97. A plaintiff need only show that "something was wrong with the product," rather than proving a specific defect. Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 65 N.J. 582,

4

591 (1974) (internal quotations and citation omitted).  The mere occurrence of an accident, however, is not enough to show a design defect.  See id.

The existence of a design defect, and whether the manufacturer had control over the product, may be proven by: (1) direct evidence; (2) circumstantial evidence; (3) any evidence that may negate other possible and likely causes of the product failure for which defendant is not responsible, and which would make reasonable the inference that the product defect existed at the time the defendant controlled the product; and (4) the "indeterminate product test."  See Myrlak, 157 N.J. at 105.  Additionally, expert testimony that "a product's design was defective by its very nature establishes that the defect arose while in the control of the manufacturer."  Scanlon, 65 N.J. at 592.

Any evidence relating to the "age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance" may give rise to an inference that the design defect existed while in the manufacturer's control.  Id. at 593.  Whether the product was defective while in the manufacturer's control may be established where the product is such that the jury could "infer that in the normal course of human experience an injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer."  Id.

A plaintiff may also prove that the design defect existed in the manufacturer's control by negating other possible causes of the product failure that are not the manufacturer's responsibility.  See id. at 593–94.  A plaintiff must show that it is more probable than not that the cause of the accident was one for which the defendant is responsible.  See Jakubowski v. Minn. Mining & Mfg., 42 N.J. 177, 186 (1964).  It is not necessary for a plaintiff to discount

all possible causes, only the most likely causes.  See Myrlak, 157 N.J. at 99.  Depending on

the product's complexity, "this type of proof may require the testimony of an expert witness

as to the various possible explanations for the mishap."  Scanlon, 65 N.J. at 594.

The indeterminate product test applies only where a plaintiff cannot prove a specific

product defect.  Myrlak, 157 N.J. at 105.  The indeterminate product test states that:

> It may be inferred that the harm sustained by the plaintiff was caused by a
> product defect existing at the time of sale or distribution, without proof of a
> specific defect, when the incident that harmed the plaintiff:
> (a) was of a kind that ordinarily occurs as a result of a product defect; and
> (b) was not, in the particular case, solely the result of causes other than product
> defect existing at the time of sale or distribution.

Id. at 104.  Both elements "can be satisfied through direct and circumstantial evidence as well

as by evidence negating other causes for the failure of the product for which the defendant

would not be responsible."  Id.

Expert testimony is required in a design defect case where the subject matter "falls

outside of the common knowledge of the factfinder and depends on scientific, technical, or

other specialized knowledge."  Jerista v. Murray, 185 N.J. 175, 199 (2005); see also Butler v.

Acme Mkts., Inc., 89 N.J. 270, 283 (1982) (stating that expert testimony is necessary where

"the matter to be dealt with is so esoteric that jurors of common judgment and experience

cannot form a valid judgment"); Macri v. Ames McDonough Co., 211 N.J. Super. 636, 642

(App. Div. 1986) (requiring expert testimony where subject matter is such that jurors of

common judgment and experience cannot "make a determination without the benefit of the

information and opinions possessed by a person with specialized knowledge").  Where an

"average juror can deduce what happened without resort to scientific or technical knowledge, expert testimony is not mandated." Jerista, 185 N.J. at 200.

## II.    ANALYSIS

In this case, Plaintiff relied upon the expert evidence of Gene Litwin to prove that the ladder design at issue was defective. (See dkt. 33-4 at 2–5.)  As discussed above, this Court excluded Plaintiff's expert testimony in a prior motion. (See dkt. 30; dkt. 31.)  Defendants thus argue that Plaintiff has failed "to establish [his] prima facie case against the Defendants using the purported opinions of defect and causation of [his] expert, Gene Litwin." (Dkt. 33 at 7.)

The Court finds that summary judgment is appropriate because Plaintiff does not offer expert testimony regarding the alleged design defect, and does not provide any additional evidence that would allow a jury to conclude that a design defect existed and was the cause of Plaintiff's injury. See Myrlak, 157 N.J. at 97.  Expert testimony is required where the subject matter is outside the common knowledge and experience of the average juror. See Jerista, 185 N.J. at 199; Butler, 89 N.J. at 283.  Here, the specific defect alleged involves a particular design of stepladder. (See dkt. 1 at 8.)  See also supra Background, Sec. I.  A stepladder is a subject matter beyond the common knowledge and experience of an average juror, and thus, expert testimony is required. See Smith v. Keller Ladder Co., 275 N.J. Super. 280, 286 (App.Div. 1994) (holding that expert's conclusory statements about ladder defect "failed to present sufficient evidence from which the jury could have reasonably concluded that the extension ladder which defendant manufactured was defectively designed.").

Plaintiff must also prove that the alleged defect caused this particular accident.  See

Myrlak, 157 N.J. at 97.  Whether the alleged defective ladder actually caused Plaintiff's

accident is also beyond the common knowledge and experience of an average juror.  Without

an expert testifying as to the age of the ladder, whether the ladder underwent normal "wear

and tear," and how the various parts of a ladder interact with one another, the jury is left to

speculate as to the cause of Plaintiff's accident.  Such speculation by the jury should be

avoided.  See Kelly v. Berlin, 300 N.J.Super. 256, 268 (App.Div. 1997) (noting that jurors

"should not be allowed to speculate without the aid of expert testimony in an area where

laypersons could not be expected to have sufficient knowledge or experience" (quotation and

citation omitted)).

The Court finds no other evidence that would permit a jury to conclude (1) the

existence of the alleged defect, and (2) that the defect was the cause of Plaintiff's injuries.

Thus, a genuine issue of material fact has not been raised, and summary judgment in favor of

Defendants on the specific product defect claim is appropriate.

## CONCLUSION

For the above-stated reasons, the Court will grant the motion for summary judgment

and enter judgment in favor of the moving defendants.  The Court will issue an appropriate

order and judgment.

   s/ Mary L. Cooper

**MARY L. COOPER**
United States District Judge

**Dated:** February 10, 2016

8